IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES SULTAN, No. A-93755,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CIVIL NO. 12-cv-00828-GPM** |
| ) | |
| **MARC HODGE,** ) | |
| **MARK STORM,** ) | |
| **TY BATES, and** ) | |
| **S.A. GODINEZ,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff Charles Sultan is in the custody of the Illinois Department of Corrections ("IDOC"), currently housed at Lawrence Correctional Center ("Lawrence"). Sultan brought this action pursuant to 42 U.S.C. § 1983, alleging that perceived differences in the conditions of confinement at Lawrence, compared with other level two, medium security IDOC facilities, violate his constitutional rights. In a succinct three-page order dated August 30, 2012, the Court dismissed the complaint in its entirety, with prejudice (Doc. 6). The Court reasoned that Plaintiff failed to state an Eighth Amendment claim regarding the conditions of his confinement because the complaint offered only conclusory legal assertions and general objections to the conditions of confinement, without stating when events occurred or identifying any individual personally responsible. The Court further found that no due process claim had been asserted because inmates do not have a protected liberty interest in their prison classification. Accordingly, the Clerk entered final judgment against Plaintiff (Doc. 7). Plaintiff Sultan is now before the Court seeking reconsideration and leave to file an amended complaint (Docs. 7 and 8).

1

Plaintiff argues that the Court has misconstrued his civil rights claims, mistakenly linking them to his criminal conviction(s).[1] He also explains that the prison copy clerk omitted a few pages from the exhibits attached to the original complaint. Sultan further argues that it was error to dismiss the complaint with prejudice, without notice and an opportunity to amend.

### 1. The Standard of Review

Twenty-five days after judgment was entered, Plaintiff filed the subject motion seeking reconsideration and leave to file an amended complaint (*see* Docs. 7 and 8). Plaintiff mistakenly cites Federal Rule of Civil Procedure 56, which pertains to summary judgment. In *Obriecht v. Raemisch*, 517 F.3d 489, 493-494 (7th Cir. 2008), the Court of Appeals declared that district courts should analyze post-judgment motions based on their substance: "whether a motion ... should be analyzed under Rule 59(e) or Rule 60(b) depends on the *substance* of the motion, not on the timing or label affixed to it." [2]

Different standards and time-tables govern Rule 59(e) and Rule 60(b) motions. So, for instance, Rule 59(e) permits a court to amend a judgment only if the motion is filed within 28 days of the entry of judgment, and the movant must demonstrate a manifest error of law or present newly discovered evidence that was not previously available. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 511-512 (7th Cir. 2007). By contrast, Rule 60(b) permits a court to relieve a party from an order or judgment based on these reasons, *inter alia*: mistake, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is

---

[1] Plaintiff appears to have read too much into the Court's mere reference that Plaintiff was serving a 36 year sentence for armed kidnapping, robbery and murder.

[2] Only motions filed within the 28-day deadline set forth in Rule 59(e) toll the time for filing an appeal. Motions filed after the 28-day period do not suspend the finality of any judgment. *See York Group, Inc. v. Wuxi Taihu Tractor Co., Ltd.*, 632 F.3d 399, 401 (7th Cir. 2011).

void or has been discharged; or newly discovered evidence that could not have been discovered within the deadline for a Rule 59(b) motion for new trial. A Rule 60(b) motion must generally be filed within one year of the entry of the order or judgment.

Review appears appropriate under both Rule 59(e) or Rule 60(b). *See Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008) (recognizing that a majority of circuits have held that a court may *sua sponte* vacate a judgment or order under Rule 60(b)); *Moro v. Shell Oil Co*., 91 F.3d 872, 876 (7th Cir.1996) (Rule 59(e) allows a court to correct its own errors and avoid an unnecessary appeal)). In any event, the Court, *sua sponte*, deems it appropriate to vacate its prior order in order to more fully articulate its reasons for dismissal, thereby ensuring compliance with Circuit Rule 50. Therefore, Plaintiff's motion for reconsideration and for leave to amend the complaint (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**, in that the Court's Order and the Clerk's Judgment, both dated August 30, 2012, (Docs. 6 and 7) shall be **VACATED** and the Court will reconsider the complaint under 28 U.S.C. § 1915A, but, for reasons set forth below, leave to amend is **DENIED**.

This is not a "second bite at the apple" for Sultan; it is not an opportunity to rehash old arguments or to present new arguments that could and should have been presented earlier. *Bell v. Eastman Kodak Co*., 214 F.3d 798, 801 (7th Cir. 2000); *Moro* , 91 F.3d at 876 (7th Cir.1996). Rather, the Court will review the original complaint anew.

## 2. The Complaint

According to the complaint (Doc. 1), from December 16, 2010, through at least July 18, 2012 (the date the complaint was signed), Sultan and the other inmates at Lawrence were denied "privileges [and] amenities" that are allowed at other Level II prison facilities, such as Hill Correctional Center, Galesburg Correctional Center, Western Correctional Center, Mt. Sterling

3

Correctional Center and Pinckneyville Correctional Center. More specifically, Plaintiff was denied access to the day room, allowed to shower only three times per week, allotted only three phone calls per week, not provided ice, served cold meals in his cell, permitted commissary privileges only one or two times per month, allowed to go to the recreation yard only two times per week, and the toilets only flush on a 10 minute timer (*see* Doc. 1, p. 17, ¶ 37).

Plaintiff pursued an administrative grievance, which was denied at every level. Defendant Hodge, the warden of Lawrence, concurred in the denial of the grievance (Doc. 1-1, p. 4), and Defendant Godinez, as director of the IDOC, affirmed the final adverse ruling[3] (Doc. 1-1, p. 5). Plaintiff also wrote letters complaining to Defendants Warden Hodge, Assistant Warden Mark Storm, and IDOC Deputy Director Ty Bates (Doc. 1-1, pp. 6-8). According to the complaint, Plaintiff also personally spoke with Warden Hodge, but Hodge said that he was entitled to run Lawrence as he saw fit, until the Director or Deputy Director told him otherwise (Doc. 1, p. 8, ¶ 11).

From Plaintiff's perspective, had Defendant Director S.A. Godinez properly trained all IDOC employees regarding prisoners' constitutional rights and the proper handling of grievances, none of these problems would exist.

Plaintiff claims that the conditions of his confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, and that by imposing these conditions and/or denying privileges and amenities afforded at other Level II facilities, he has been denied due process and the equal protection of the laws in violation of the Fourteenth Amendment. In

---

[3] The Administrative Review Board decision denying the grievance purports to bear Godinez's signature, but upon closer inspection it is clear that "TA" signed on behalf of Godinez (*see* Doc. 1-1, p. 5).

addition, the Court's supplemental jurisdiction under 28 U.S.C. § 1367 is invoked to assert state law negligence claims premised upon the same factual scenario.

### 3. <u>Analysis</u>

Under 28 U.S.C. § 1915A the Court is required to conduct a prompt threshold review of the complaint. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**<u>Eighth Amendment-Conditions of Confinement</u>**

The Eighth Amendment prohibits cruel and unusual punishment and is applicable to the states through the Fourteenth Amendment. It can be a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). However, not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical

care, sanitation and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

None of the conditions of confinement described in the complaint (day room; showers; phone calls; ice; cold meals in cell; commissary; limited yard; and toilet flush timers), individually or together, implicates the minimal civilized measure of life's necessities. *See Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992); *Budd v. Motley*, __F.3d__, 2013 WL 1296722, 2 (7th Cir. Apr. 2, 2013). Prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988). *See Lunsford v. Bennett,* 17 F.3d 1574, 1578 (7th Cir. 1994) (complaint about "cold, poorly prepared beans" did not state Eighth Amendment claim); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988) ("There would be a special irony in requiring the State of Illinois to provide ... three showers a week, when many law-abiding poor people in dilapidated public housing projects do not have working showers.").

Furthermore, it is well-settled that conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment. *See Johnson v. Pelker,* 891 F.2d 136, 138-39 (7th Cir.1989). Neither the complaint nor Plaintiff's grievance and letters allege that Plaintiff suffered any physical, psychological, or probability of harm from these alleged conditions. *See Thomas v. Illinois,* 697 F.3d 612, 614-615 (7th Cir. 2012) (depending on

severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment *if* they caused either physical, psychological, or probabilistic harm). Rather, Plaintiff makes clear that he only takes issue with the perceived inequality of the situation.

For these reasons, Plaintiff has failed to state a colorable Eighth Amendment conditions of confinement claim and dismissal of this claim with prejudice is warranted.

**Fourteenth Amendment-Due Process**

In *Sandin v. Conner,* 515 U.S. 472, 485 (1995), the Supreme Court explained that the Due Process Clause historically encompassed the notion that the State could not physically punish someone except in accordance with due process of law. *Id*. (quoting *Ingram v. Wright*, 430 U.S. 651, 674 (1977)). However, " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Sandin*, 515 U.S. at 485 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977), quoting *Price v. Johnston,* 334 U.S. 266, 285 (1948)). Consequently,

> [t]he due process clause requires hearings when a prisoner loses more liberty than what was taken away by the conviction and original sentence. That's why the right comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which a prisoner is actually held.

*Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011) (citing *Lekas v. Briley,* 405 F.3d 602, 608–09 (7th Cir. 2005)).

Plaintiff's claim is premised upon a comparison of Level II facilities, not one of the state's maximum security facilities. Moreover, the complaint and attached documentation make clear that Plaintiff desires to be at a more hospitable Level II facility. "The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause,

7

although the degree of confinement in one prison may be quite different from that in another." *Meachum v. Fano,* 427 U.S. 215, 224 (1976). Thus, Plaintiff's due process claim shall be dismissed with prejudice for failure to state a claim upon which relief can be granted.

There is one other possible basis for a due process claim: Director Godinez and Warden Hodge purportedly denied Plaintiff's administrative grievance regarding the conditions of Plaintiff's confinement. This is a nonstarter.

"Ruling against a prisoner on an administrative complaint does not cause or contribute to the [alleged constitutional] violation." *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). Merely knowing about a constitutional violation and failing to cure it is generally insufficient; only persons who cause or participate in the violations are responsible. *See Greeno,* 414 F.3d at 656-57; *Reed v. McBride,* 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters,* 97 F.3d 987, 992-93 (7th Cir.1996). Ruling against a prisoner's administrative grievance does not cause or contribute to the violation. Furthermore, although Godiez is the director of the IDOC and Hodge is the warden of Lawrence, the *respondeat superior* doctrine is inapplicable to Section 1983 actions. *See Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). For these reasons, insofar as the complaint could be construed as asserting a stand-alone claim based solely upon the denial of the grievance, that claim is dismissed with prejudice.

**Fourteenth Amendment-Equal Protection**

Plaintiff alleges that Defendants violated his right to equal protection because of the difference in treatment prisoners at Lawrence receive compared to those housed at other Level II, medium security facilities.

The Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A violation of equal protection can occur when a person is subjected to disparate treatment based on his membership in a "suspect class," such as race. *Srail v. Vill. of Lisle, Ill.,* 588 F.3d 940, 943 (7th Cir. 2009); *see also Martin v. Shawano–Gresham Sch. Dist.,* 295 F.3d 701, 712 (7th Cir. 2002). Conduct that irrationally targets an individual for discriminatory treatment may constitute a so-called "class of one" equal protection claim. *See Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). For a "class of one" equal protection claim, a plaintiff must allege: (1) that the defendant intentionally treated him differently from other similarly situated persons; and (2) "that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004).

Plaintiff seems to believe that, since Lawrence is classified as a Level II facility, its policies concerning prison amenities should exactly mirror other Level II facilities. His logic is simply incorrect. Again, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel." *Harris*, 839 F.2d at 1235. Accordingly, there is no guarantee that Plaintiff will receive the exact same privileges as an inmate at any other state facility, regardless of what "level" that institution has been classified. Moreover, Plaintiff never alleges that any of the defendants singled him out for the purpose of imposing more harsh conditions. A prison does not cross the line to an equal protection violation merely by having different rules than its counterpart institutions. Additionally, "prisoners possess neither liberty nor property [interests] in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*,

427 U.S. 236 (1976)). *See also Meachum*, 427 U.S. at 224 (the Constitution does not guarantee placement in a particular prison).

Plaintiff has failed to state an equal protection claim upon which relief can be granted, and thus, this claim shall be dismissed with prejudice.

**Supplemental Jurisdiction**

Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Nevertheless, 28 U.S.C. § 1367(c)(3) affords the court discretion to decline to exercise supplemental jurisdiction over a claim if all claims over which the district court has original jurisdiction have been dismissed, as is the present situation. "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Harvey v. Town of Merrillville,* 649 F.3d 526, 532–33 (7th Cir. 2011) (quoting *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999)); *see also Fields v. Wharrie*, 672 F.3d 505, 518-19 (7th Cir. 2012).

Because this case is being dismissed at the threshold stage, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law negligence claims. It does not appear that Plaintiff's claims would be barred by the two-year statute of limitations applicable to negligence claims. *See* 735 ILCS 5/13-202; *Williams v. Rodriquez*, 509 F.3d 392, 404 (7th Cir. 2007). Although the complaint references December 16, 2010, a review of the documentation attached to the complaint reveals that the first time Plaintiff complained about the conditions of his

confinement was in July 2011, which falls within the two-year limitations period. Therefore, Plaintiff's state law negligence claims shall be dismissed without prejudice.

**Leave to Amend**

Federal Rule of Civil Procedure 15 (a) generally permits amendment of the complaint once as a matter of course prior to a responsive pleading being filed. Also, "district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Donald v. Cook Counnty Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir. 1996). Thus, it would appear that Plaintiff should be given an opportunity to amend the complaint in an attempt to state a viable Section 1983 claim. However, the Court need not grant leave to amend where amendment would be futile. *See Crestview Village v. United States Dep't of Housing and Urban Dev.,* 383 F.3d 552, 558 (7th Cir. 2004).

Plaintiff's claims were dismissed because the claims were not legally viable, not because, for example, they failed to give notice of the claims as required under Federal Rule of Civil Procedure 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims and the factual underpinnings were clear, thereby enabling the Court to determine that the claims were not legally viable, even taking all allegations as true. The only way Plaintiff could amend the complaint to state a claim upon which relief could be granted would be to plead *different* claims. Put another way, based on the claims, the purported facts and the supporting documentation, Plaintiff has pleaded himself out of court.

### 4. Motion for Appointment of Counsel

Although the Court has dismissed all claims, Plaintiff's motion for appointment of counsel (Doc. 10) will be addressed in order to make clear that the appointment of counsel is not warranted and, therefore, would not alter the outcome.

The Court may ask an attorney to represent an indigent civil litigant *pro bono*, but may not require the attorney to accept the invitation. 28 U.S.C. § 1915(e)(1). In deciding whether to attempt to recruit counsel, the Court asks (1) whether the plaintiff made reasonable efforts to obtain counsel on his own, and, (2) whether the plaintiff is competent to proceed in light of the difficulty of the case. *Bracey v. Grondin,* ––– F.3d –––, 2013 WL 1007709 *2 (7th Cir. Mar. 15, 2013). Relevant factors include, but are not limited to, a plaintiff's literacy, education, litigation experience, communication skills, psychological history, intellectual capacity, and ability to conduct discovery. *Id.* at *6 n. 3 (*citing Pruitt v. Mote,* 503 F.3d 647, 655 (7th Cir. 2007)).

Plaintiff asserts that he cannot afford counsel and his personal attempts to recruit counsel have not been fruitful. He also stresses that he only has a grammar school education. He has supplied the Court with a copy of his prison trust fund account showing that he is indeed indigent. Also attached to the motion are copies of five letters from attorneys or legal assistance groups declining Plaintiff's requests for representation.

Three of the five letters declining Plaintiff's requests for representation either predate the events at issue in the complaint, or clearly pertain to other litigation. However, two letters *possibly* relate to efforts to seek representation relative to this case. In any event, despite his limited education, Plaintiff's filings demonstrate that he is literate and is able to communicate the factual basis for his claims. He attaches relevant evidence to his complaint, and his motions

demonstrate some knowledge of federal procedure. Thus, the Court concludes that the recruitment of counsel is not warranted. Furthermore, the Court does not perceive that the appointment of counsel could have saved the complaint from dismissal. For these reasons, Plaintiff's motion for appointment of counsel (Doc. 10) shall be **DENIED**.

### 5. Disposition

**IT IS HEREBY ORDERED** that Plaintiff Sultan's motion for reconsideration and for leave to amend the complaint (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**: the Court's Order and the Clerk's Judgment, both dated August 30, 2012, (Docs. 6 and 7) are **VACATED** and leave to amend the complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Doc. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that, for the reasons stated, Plaintiff Sultan's Eighth Amendment conditions of confinement claims and his Fourteenth Amendment due process and equal protection claims are all **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted; Plaintiff's supplemental state law negligence claims are **DISMISSED** without prejudice; and Defendants **S.A. GODINEZ**, **TY BATES**, **MARC HODGE** and **MARK STORM** are **DISMISSED** from this action with prejudice.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Plaintiff is further **ADVISED** that if he wishes to appeal this dismissal, he may file a notice of appeal with this district court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also accumulate another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

Lastly, Plaintiff is also **ADVISED** that he is under a continuing obligation to keep the Clerk informed of any change in his address, and that the Court will not independently investigate his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents.

**IT IS SO ORDERED.**

**DATED:** May 3, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge